## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| STACEY FLETCHER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 10 C 4682 |
| v. | ) ) | |
| | ) | The Honorable William J. Hibbler |
| ONEWEST BANK, FSB, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stacey Fletcher brought this case, a putative class action, against the servicer of her mortgage, OneWest Bank, FSB.[1] Fletcher's claims that OneWest mishandled her application for a mortgage loan modification pursuant to the federal government's Home Affordable Modification Program (HAMP). She alleges breach of contract, promissory estoppel, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. 505/1 *et seq.* OneWest now moves to dismiss her claims for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the Court grants OneWest's motion in part and denies it in part.[2]

---

[1] Fletcher listed "IndyMac Mortgage Services, FSB, a division of OneWest Bank, FSB" as the defendant. However, because the parties agree that IndyMac Mortgage Services is simply a division of OneWest Bank, the Court substitutes OneWest as the proper defendant. The Court refers to both OneWest and IndyMac as "OneWest" throughout the opinion.

[2] The Court bases its ruling on OneWest's brief in support of its motion, Fletcher's response brief, and OneWest's reply brief. The Court disregards the additional briefing supplied by the parties because the parties filed their briefs without leave of the Court, and because Fletcher's final "brief" took the form of a letter to the Court rather than a memorandum in support of her position.

1

# I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss under federal notice pleading, a claimant must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the claimant's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must "clearly allege facts that invoke federal court jurisdiction." *Id.* The Court "presume[s] that federal courts lack jurisdiction unless the contrary appears from the record." *Id.* (internal quotation omitted). The Court may consider any relevant evidence the parties submit. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999)).

# II. Background

Fletcher alleges the following facts in her amended complaint, which the Court must accept as true for purposes of the Rule 12(b)(6) motion. *Disability Rights Wisc.*, 522 F.3d at 799.

On July 7, 2006, Fletcher took out a mortgage for the purchase of her residence. OneWest is responsible for servicing the mortgage. On or about August 2008, Fletcher encountered financial difficulties. She struggled to make mortgage payments. As a result,

beginning in February 2009, she made multiple requests to OneWest for loan modifications. OneWest did not respond to her requests until October 2009, when a OneWest representative instructed Fletcher to miss her loan payments in order to qualify for a loan modification through the HAMP Program and then to reapply. Relying on this advice, Fletcher missed her loan payments in November and December. In December 2009, OneWest notified her via letter that she might qualify for loan modification. The same month, she applied for a modification under the HAMP program.

HAMP is a creation of the United States Treasury Secretary and the Director of the Federal Housing Finance Agency. It is a federally funded program that incentivizes participating servicers, such as OneWest, to enter into agreements with struggling homeowners to make adjustments to existing mortgage obligations. Servicers enter into Servicer Participation Agreements (SPAs) with the government, and agree to follow the government's guidelines for the program.

Pursuant to the guidelines, and relying on Fletcher's representations regarding her income, OneWest offered Fletcher a Trial Period Plan (TPP) in January 2010. According to the TPP documentation, Fletcher was to make three reduced monthly payments on her mortgage, supply documentation regarding her financial state, and agree to home inspections and credit counseling if necessary. OneWest would then consider her financial information and approve a permanent loan modification if she qualified and made her trial payments on time. The first payment was due March 1, 2010. Fletcher signed the TPP document OneWest provided and began making her trial payments on February 21, 2010. She sent OneWest all the required documentation before the deadline of February 25, 2010.

Despite Fletcher's compliance with the terms of the TPP, OneWest repeatedly sent her letters indicating that her payments were late or that OneWest had not received them. OneWest applied substantial late fees and other fees to her account. By April 19, 2010, OneWest sent Fletcher a statement indicating that she owed a total amount of $10,766.93 on her account. OneWest also reported her loan as delinquent to credit bureaus, causing damage to her credit score.

Fletcher filed her complaint in July 2010. She had continued to make her trial period payments at the beginning of every month, but had never received a response from OneWest concerning her qualification for HAMP. She had foregone other options for resolving her financial struggles, such as selling her house or declaring bankruptcy, while she awaited a response from OneWest. Fletcher alleges that OneWest has engaged in similar delay with regard to HAMP applications submitted by other homeowners, and is therefore attempting to bring this suit as a class action.

For purposes of its 12(b)(1) motion to dismiss, OneWest has provided the Court with evidence that it has since considered Fletcher's application and concluded that she is not qualified for a HAMP modification. OneWest nonetheless offered Fletcher a permanent loan modification on terms similar to a HAMP modification, but outside of the federal program. Fletcher rejected the offer. Fletcher does not dispute any of this evidence, so the Court accepts it as true for purposes of OneWest's motion to dismiss for lack of jurisdiction.

### III. Analysis

Fletcher now claims that by breaking the promises it made in the TPP, OneWest breached a contract with her. In the alternative, she makes a claim for promissory estoppel, arguing that she reasonably relied to her detriment on the promises in the TPP. Finally, she claims that

OneWest's handling of her HAMP application violates the Illinois Consumer Fraud and Deceptive Business Practices Act. OneWest sets forth a number of arguments for why the Court should dismiss Fletcher's complaint in its entirety. The threshold question is whether the Court has jurisdiction over the suit.

## A. Jurisdiction

OneWest argues that because it has considered Fletcher's application, concluded she does not qualify for HAMP, and offered her a permanent loan modification, her claim is moot and this Court therefore lacks jurisdiction. *See Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (holding that when defendant offers the named plaintiff all of the damages he seeks, the case is moot and must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)). In response, Fletcher first makes clear that she does not claim that she is entitled to permanent loan modification under HAMP. Instead, she claims that OneWest failed to consider her HAMP application in a timely fashion, and that she suffered as a result of the delay. Thus, she argues that OneWest's late review of her application and offer of an alternative loan modification do not moot her claims. OneWest suggests that Fletcher would have incurred fees anyway because she missed payments on her mortgage prior to applying for the HAMP modification.

OneWest's review of and response to Fletcher's HAMP application do seem to moot any fees OneWest properly applied according to the terms of the TPP during the first three months of trial payments. Even under Fletcher's theory of contract liability, if she agreed to incur those fees in return for OneWest's consideration of her application, then she cannot complain about those fees now that OneWest has performed, even if its performance was untimely. However, if Fletcher reasonably relied on the terms of the TPP, and OneWest's apparent silence in response to her application, in continuing to make reduced payments and incur fees, OneWest's untimely

5

performance does not satisfy Fletcher's demand for the damages she suffered as a result of that delay. Alternatively, if the fees Fletcher incurred during the three-month trial period continued to grow during this period of delay, it is plausible that Fletcher did not consent to those additional fees in the TPP. Notably, OneWest does not provide the Court with evidence that none of the fees are a result of OneWest's delay. Thus, the Court cannot conclude that Fletcher's claims are moot. Finally, it appears that some of the fees are a result of Fletcher missing payments at the advice of a OneWest representative. OneWest argues that it was not reasonable for Fletcher to rely on this advice, but the Court addresses that issue in more detail below.

**B. Failure to state a claim**

OneWest next argues that even if the Court has jurisdiction over Fletcher's case, she fails to state an actionable claim.

**1. Claims based on conduct allegedly violative of HAMP guidelines**

Its threshold argument under Rule 12(b)(6) is that because HAMP does not provide for a private right of action, Fletcher cannot bring state law claims that are essentially based on alleged violations of the HAMP guidelines.

OneWest finds direct support for this argument in at least one decision from this district, *Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 WL 250501, *4-*5 (N.D. Ill. Jan. 25, 2011), which is currently on appeal before the Seventh Circuit Court of Appeals. In *Wigod*, the Court dismissed similar claims that a servicer should be held liable under theories of breach of contract, promissory estoppel, and Illinois Consumer Fraud and Deceptive Business Practices Act violations, for breaking promises in the TPP. *Id.* at *4-*5 & *8-*10. The Court reasoned, "Because 'the alleged offer to modify came about and was made wholly under the rubric of HAMP, as were [the plaintiff]'s alleged actions in acceptance of the offer…, [the plaintiff] fails to state a cause of action independent of HAMP, for which there is not private right of action.'"

*Id.* at *5 (quoting *Vida v. OneWest Bank, F.S.B.*, No. 10-987, 2010 WL 5148473, *3-*4 (D. Or. Dec. 13, 2010) (brackets in original). Fletcher notes that there is disagreement among district courts as to the validity of the reasoning in *Wigod*, however. *See, e.g., Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 351 (D. Mass. 2011).

The Court does not find the reasoning in *Wigod*, *Vida*, or the other cases cited by OneWest persuasive. These cases hold that a state claim for breach of contract that is based on conduct that is arguably violative of HAMP guidelines is not "sufficiently independent" of HAMP to avoid preclusion as an attempt at a private action to enforce HAMP. *See Wigod*, 2011 WL 250501, at *4 (quoting *Vida*). However, the opinions do not provide citation to a general rule that where a state common law theory provides for liability for conduct that is also violative of federal law, a suit under the state common law is prohibited so long as the federal law does not provide for a private right of action. Indeed, it seems the only justification for such a rule would be federal preemption of state law, as suggested by the court in *Bosque*.

OneWest does not seem to argue that Fletcher's contract-based theories are preempted, however. In fact, OneWest recognizes that state contract law that incidentally touches on issues that are subject to federal regulation is generally not preempted. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 643-44 (7th Cir. 2007). In *Ocwen*, the Seventh Circuit addressed the question of whether the Home Owners Loan Act (HOLA), 12 U.S.C. § 1461 *et seq.*, and the Office of Thrift Supervision (OTS) regulations promulgated thereunder, preempted state contract law claims. The court noted that HOLA's preemptive force gave OTS the "exclusive authority to regulate the savings and loan industry in the sense of...prescribing certain terms in mortgages," among other things, but that the OTS "has no power to adjudicate disputes between S & Ls [savings and loan associations] and their

customers," and "HOLA creates no private right of action to sue to enforce the provisions of the statute or the OTS's regulations." *Id.* at 643. "Against this background of limited remedial authority," the court held that HOLA did not preempt "basic state common-law type remedies" for people harmed by the actions of S & Ls because, among other things, "[i]t would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract." *Id.* at 643-44. The Court noted that while that type of preemptive force was possible, it was rare, and limited to exceptional statutes such as the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. *Id.* at 644. Thus, without some explicit direction from Congress that it intended programs such as HAMP to have such preemptive force, the Court will not preclude Fletcher from pursuing her basic state common law remedies. If mortgages whose terms are prescribed by OTS can still be enforced through contract law, it seems logical that a TPP, if it appears to fit the legal definition of a contract, can also provide the basis for a suit under state law even if its terms are prescribed by the federal government. Why should the fact that OneWest contracted to follow federal law prohibit Fletcher from holding it to that contract?

### 2. Breach of contract

The Court must next determine whether Fletcher has indeed pleaded the elements of a breach of contract claim. OneWest's primary argument on this question is that Fletcher's claim cannot survive because the TPP does not promise a loan modification. Of course, as noted above, Fletcher concedes that this is the case and argues instead that OneWest promised to consider her application and give her a determination as to whether she was qualified for a loan modification. OneWest does not dispute that it made such a promise.

OneWest's next argument is that Fletcher's claim fails for a lack of consideration. OneWest points out that the main benefits flowing from Fletcher to OneWest during the trial

period, and the main promise Fletcher made when she signed the TPP, were the reduced trial period payments. OneWest argues that these payments fail as consideration under the pre-existing duty rule, which "provides that where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment." *DiLorenzo v. Valve & Primer Corp.*, 347 Ill. App. 3d 194, 201, 807 N.E.2d 673, 679 (Ill. App. Ct. 2004) (internal quotation omitted). OneWest argues that Fletcher's additional promises, such as her promise to turn over financial information, are also insufficient as consideration, relying on *Barinaga v. JP Morgan Chase & Co.*, 749 F. Supp. 2d 1164, 1174 (D. Or. 2010), and *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1197 (S.D. Cal. 2010). Finally, OneWest argues that Fletcher's decision to forego other avenues for recovering from financial trouble, such as bankruptcy or listing the property, was also insufficient consideration because Fletcher did not promise to do those things in the TPP. Moreover, OneWest points out that Fletcher was not forbidden from pursuing either option while pursuing a HAMP modification.

While OneWest is correct about the application of the pre-existing duty rule, and about the fact that Fletcher did not promise to forego other options, the Court need not consider the validity in the reasoning of *Barinaga* and *Mehta* because the Court finds that Fletcher has adequately pleaded consideration elsewhere in her complaint. When Fletcher made her reduced trial period payments, she was not relieved of her ultimate obligation to pay back the debt she did not pay as a result of those reductions, nor was she relieved of the consequences of failing to pay her full monthly payments during those months. Thus, by agreeing to make reduced monthly payments during the trial period, Fletcher was essentially agreeing only to delay her obligations on paying back the loan. While OneWest characterizes this as a windfall to Fletcher, who did not have to pay as much as normal during those months, the fact is that it was likely not entirely

9

beneficial to Fletcher, who incurred fees and probably increased the total amount that she would end up paying over the life of the loan. Thus, it is unfair to categorize Fletcher's promise to pay reduced monthly payments solely as a pre-existing duty. While Fletcher did have a pre-existing duty to pay that amount to OneWest, she actually suffered some detriment by agreeing to pay less than the full amount she owed. Thus, the Court will not dismiss Fletcher's breach of contract claim for failure to allege consideration.

OneWest next argues that Fletcher has failed to plead damages. Fletcher argues that she suffered damages in the form of fees, charges, accrued interest, and damage to her credit reports. OneWest claims that all of these costs were the result of the payments Fletcher missed prior to entering into the TPP. However, OneWest provides no evidentiary support for this claim, nor would such evidentiary support be appropriate on a Rule 12(b)(6) motion to dismiss. Fletcher alleges that she suffered these damages at least in part as a result of the time she spent waiting for a response from OneWest while it failed to consider her HAMP application. Thus, Fletcher has alleged damages for her breach of contract claim.

### 3. Promissory estoppel

The only argument OneWest makes against Fletcher's promissory estoppel claim in addition to the arguments it sets forth regarding her breach of contract claim is that Fletcher was unreasonable to rely to her detriment on OneWest's promise. However, OneWest's argument is based mostly on its belief at the time it filed its motion that Fletcher was claiming reliance on OneWest's promise of a loan modification, a promise that Fletcher concedes OneWest did not make. Instead, Fletcher is claiming reliance on OneWest's promise to consider her application and give her a response. She claims that she racked up additional fees and costs as a result of OneWest's delay. This claim is actually stronger under the theory of promissory estoppel because it is not clear from the TPP that OneWest promised an answer to Fletcher's application

10

by any date certain. While Fletcher can potentially argue that the time period was implied or that OneWest is bound by its contractual duty of good faith and fair dealing, she may be more successful arguing that her reliance on OneWest's promise was reasonable under the circumstances.

### 4. Consumer Fraud and Deceptive Business Practices Act

Finally, OneWest moves to dismiss Fletcher's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act for failure to state a claim. OneWest's first argument is that Fletcher's claims are pre-empted. As noted above, the Seventh Circuit addressed the preemptive force of HOLA with regard to state laws purporting to regulate the activities of S & Ls such as OneWest in *Ocwen*. The court noted that HOLA explicitly preempts state laws regulating "the savings and loan industry in the sense of fixing fees (including penalties), setting licensing requirements, prescribing certain terms in mortgages, establishing requirements for disclosure of credit information to customers, and setting standards for processing and servicing mortgages." 491 F.3d at 643. But, as noted above, the *Ocwen* court also excluded basic state common law remedies from HOLA's preemptive effect "to the extent that they only incidentally affect the lending operations of Federal savings associations." *Id.* (quoting 12 C.F.R. § 560.2(c)).

OneWest now concedes that, based on *Ocwen*, Fletcher's claims that sound in state fraud and contract law are not preempted. Instead, OneWest only argues that federal law preempts Fletcher's claims that more closely resemble an attempt to use Illinois law to regulate OneWest's servicing practices. The Court agrees that *Ocwen* preempts those claims, including any claims contesting the guidelines OneWest follows in determining homeowners' qualifications for loan modifications, the fees OneWest charges, and the disclosures OneWest was required to make

11

regarding Fletcher's credit.[3] OneWest attempts to argue that this preemption should extend to Fletcher's claims that OneWest failed to evaluate her application for a loan modification because that evaluation is a component of its servicing procedures. However, while the actual procedures and guidelines OneWest follows in evaluating an application are the subject of federal regulation, the question of whether or not OneWest even engaged in evaluation is more properly conceived of as a question that is incidentally affected by state consumer protection law.

OneWest next argues that Fletcher's contract claims that are not preempted should still be dismissed for all of the reasons it moves to dismiss Fletcher's breach of contract and promissory estoppel claims. However, the Court has already rejected those arguments. OneWest also argues that Fletcher's fraud claims should be dismissed because her reliance on OneWest's representations was not reasonable and she suffered no detriment as a result. Insofar as OneWest is referring to the representations it made in the TPP, these arguments mirror those set forth regarding Fletcher's breach of contract and promissory estoppel claims as well and fail for the same reasons.

Insofar as OneWest is referring instead to Fletcher's claim that she was misled by OneWest's instruction that she default on her mortgage in order to be considered for modification, the argument is a little different. OneWest argues that because HAMP provides for loan modification for homeowners who are either in default or at imminent risk of default, OneWest's alleged misrepresentation was only a misstatement of the law. OneWest argues that the statement is therefore not actionable because "[a] deceptive representation or omission of law generally does not constitute a violation of the [Illinois Consumer Fraud and Deceptive Business

---

[3] The Court does not suggest that Fletcher cannot claim damages on the basis of fees OneWest charged or credit reports it made as the result of some other practice that Fletcher can challenge through her remaining state law claims. In other words, Fletcher cannot challenge the reasons OneWest charges fees and makes credit disclosures through state law, but she can claim that she incurred fees or damage to her credit report as a result of any conduct by OneWest that was violative of state law.

Practices Act] because both parties are presumed to be equally capable of knowing and interpreting the law." *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805, 612 N.E.2d 984, 987 (Ill. App. Ct. 1993). While this is true, OneWest is too quick to categorize the statement as a misstatement of the law. Depending on how the statement was worded, it might have been a straightforward statement about how Fletcher could legally qualify for a loan modification under HAMP. However, it may have also been a factual statement about when OneWest would consider her for a loan modification. The statement would have been deceptive since OneWest had agreed to follow the HAMP guidelines, but it was not necessarily a statement about what those guidelines were. Thus, the Court also denies OneWest's motion to dismiss on that claim.

## CONCLUSION

For these reasons, the Court GRANTS Defendant's motion to dismiss insofar as it concerns Plaintiff's claims that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act through its servicing practices and procedures, but DENIES it in all other respects.


IT IS SO ORDERED.


6/30/11
Dated

Hon. William J. Hibbler
United States District Court

13